IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DWAYNE ROBERTS, :
:
    Plaintiff :
: CIVIL NO. 1:CV-15-2456
   vs. :
: (Judge Caldwell)
PA DEPARTMENT OF :
CORRECTIONS, *et al.*, :
:
    Defendants :

*M E M O R A N D U M*

I.   *Introduction*

The pro se plaintiff, Dwayne Roberts, an inmate at the state correctional institution in Rockview, Pennsylvania, filed this civil-rights action pursuant to 42 U.S.C. § 1983.[1] Plaintiff asserts a claim under the Eighth Amendment against several medical professionals employed by the private corporation that provides health care to SCI-Rockview inmates and the "grievance coordinator" at SCI-Rockview.[2]

This case is now before the court for a preliminary review pursuant to 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we will dismiss the complaint for failure to state a claim upon which relief may be granted, principally because Plaintiff has

---

   [1] Roberts' action was transferred to this court from the Eastern District of Pennsylvania.

   [2] Defendants are identified as Dr. Doll, Physician Assistant (PA) Julie Coltie, PA Christy Doe and PA Beth Doe. Plaintiff also named Ted Williams, whom is identified as the institution's grievance officer. (Doc. 1-1, Compl.)

failed to make allegations that would support an essential element of his Eighth Amendment claims, deliberate indifference to his medical needs.

II.     *Standard of Review*

When a litigant seeks to proceed *in forma pauperis,* without the prepayment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint.  Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint.  *See* 28 U.S.C. § 1915A.  Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(I) - (iii); 28 U.S.C. § 1915A(b)(1) - (2).

A complaint is frivolous if it lacks an arguable basis either in law or fact.  *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)(citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832-33, 104 L.Ed.2d 338 (1989)).  In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  The court may also rely

on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Finally, *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Philips*, 515 F.3d at 245-46 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

III.   *Background.*

According to the Complaint, it is recorded in Roberts' medical chart that he is allergic to the drug Bactrim. On October 14, 2014 Dr. Doll ordered Bactrim for Roberts to replace his intravenous antibiotics. (Doc. 1-1, ECF p. 3 and p. 10). Both PA Coltie and PA Beth "Doe" were parties involved in administering the Bactrim to him. Roberts was to be seen by Dr. Doll on October 21, 2014, but he failed to appear for the appointment. (*Id.*, ECF p. 10). He was seen the following day "and there were no issues noted while taking the Bactrim." (*Id.*)

On October 23, 2014, Roberts was seen by nursing staff for a rash on his upper arms. He was seen the following day by a physician assistant for a possible drug reaction. It was noted that he had hives and facial swelling. (*Id.*) At that time, his medication was switched to Clindamycin and he received an injection of Benadryl, and capsules by mouth as needed. (*Id.*, ECF p. 10). Roberts alleges he also had a speech impairment at the time. (*Id.*, ECF p. 4).

Dr. Lightbourn (non-defendant) saw Roberts on October 26, 2014, concerning continued complaints related to a reaction. He was then admitted to the infirmary and given steroids. When Dr. Doll saw him later that day, noting no improvement, she ordered him be taken to the local hospital concerning a possible medication reaction. (*Id.*, ECF p. 10). Following his return from the hospital he was seen by Dr. Doll on October 30, 2014; November 6, 2014; and November 20, 2014. (*Id.*) Roberts had no major complaints other than itching at those visits. (*Id.*) On December 9, 2014, W. Ted Williams, who identifies himself as the Corrections Health Care Administrator, denied Roberts' grievance. (*Id.*)

Defendants are sued in their individual and official capacities. Roberts seeks monetary relief. He calls the medical defendants' behavior "neglegent (sic) and unprofessional." (*Id.*, ECF p. 10).

IV. *Discussion.*

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." *Rode v.*

-4-

*Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  *See also Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003)(citing *Rode*).  Liability may not be imposed under § 1983 on the traditional standards of *respondeat superior. Rode*, 845 F.2d at 1207-08.  Moreover, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct."  *Capone v. Marinelli*, 868 F.2d 102, 106 n.7 (3d Cir. 1989) (citing *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)).  A doctor under contract to a state to provide medical services to prisoners is considered to be acting under color of state law, *West v. Atkins*, 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40, 53 (1988), and the principles just mentioned apply in that context as well.  *Hetzel v. Swartz*, 909 F. Supp. 261, 264 (M.D. Pa. 1995).[3]

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v.*

---

[3] However, it is unsettled whether a doctor who works for a private medical facility can nonetheless be considered a state actor for having treated a prisoner.  *Compare Conner v. Donnelly*, 42 F.3d 220 (4th Cir. 1994)(considered state actor) *with Nunez v. Horn*, 72 F. Supp. 2d 24 (N.D.N.Y. 1999)(not a state actor).  *See also Collyer v. Darling*, 98 F.2d 211 (6th Cir. 1996)(doctor who examined state employee only once was not a state actor by virtue of having performed that examination).

*Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).  Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . ." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Id.*, 429 U.S. at 107, 97 S.Ct. at 293.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

    A.    *Claims Against CHCA Williams*

It appears Roberts misidentified this defendant as the "grievance officer" at SCI-Rockview because Williams responded to his grievance concerning his medical care. However, the grievance response, which is attached to the Complaint (*see* Doc. 1-1, ECF p. 10), clearly identifies Williams as the institution's Corrections Health Care Administrator. Williams is not a physician.  Williams is not alleged to have personally participated in any aspect of Roberts' medical care.  He is named simply because of Roberts' dissatisfaction with Williams' response and failure to properly investigate his claims.  Hence, Roberts fails

to state a claim against Williams.  *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (prison personnel who are not physicians cannot be considered deliberately indifferent for failing to respond to an inmate's medical needs when the inmate is already receiving treatment from the prison's medical staff); *Rode*, *supra* (no civil rights claim can be made against a defendant who lacks personal involvement).  Williams sole involvement was not to thoroughly investigate Roberts' claims of the medical defendants "negligence and unprofessional conduct."  Accordingly, Roberts fails to state a claim upon which relief can be granted against Williams.

       B.    *Dr. Doll and the Physician Assistants*

Roberts claims Dr. Doll and the various identified, and unidentified, physician assistants, who prescribed and dispensed Bactrim to him are employed by the contract health-care provider at SCI-Rockview.  While Roberts believes the defendants mishandled his care, knowing he was allergic to Bactrim, this allegation does not rise to the level of a claim of deliberate indifference to his serious medical needs.

Here Roberts supplies documents that suggest Dr. Doll, aware of his allergy to Bactrim was concerned with possible soft tissue infection for an unknown pre-existing medical condition when she ordered Bactrim to replace his intravenous antibiotics on October 14, 2014.  After receiving two doses without any reaction, Dr. Doll ordered the medication continued and the drug removed from Roberts' known list of allergies.  Seven days after his initial dose, Roberts failed to appear at his next scheduled medical appointment but was seen the following day by a nurse who noted no issues with the

Bactrim.  (Doc. 1-1, ECF p. 10).  The following day, a physician assistant examined him, and noting a possible drug allergy, discontinued the Bactrim.  He was given a Benadryl injection and capsules as needed.  Two days later when still uncomfortable Roberts was admitted to the infirmary by a non-defendant physician and given steroids.  Dr. Doll saw him later that day and ordered his transport to the local hospital for possible drug allergy.

Based on these events, Dr. Doll exercised her professional medical judgment when ordering Bactrim for Roberts.  She proceeded cautiously when initially prescribing the medication and followed Roberts for a possible reaction.  After no signs of a drug reaction were noted, she continued to prescribe Bactrim for Plaintiff's underlying condition. Clearly, she did not ignore the risk of a possible drug reaction when choosing this course of treatment for Roberts.  The physicians assistants, following Dr. Doll's orders, dispensed the Bactrim to Roberts.  Once alerted to a possible drug allergic reaction more than a week after his initial dose, the documents attached to the Complaint demonstrate medical staff, including Dr. Doll, acted to reduce the likelihood of harm to Roberts by discontinuing the medication and administering Benadryl.  When this did not resolve his complaints, he was admitted to the infirmary, given steroids, and ultimately sent to the local hospital for further treatment.  At best, Roberts claims are of medical negligence against these defendants; however, claims of medical negligence are not actionable under the Eighth Amendment. *See Durmer v. O'Carroll,* 991 F.2d at 67.  Accordingly, Roberts' Eighth Amendment claims against the medical defendants will be dismissed.

V.  *Conclusion*

We will dismiss the complaint.  Normally, we would grant leave to amend if it was possible for Plaintiff to cure the deficiencies in his pleading.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  However, given the detail Plaintiff has already supplied in his complaint, amendment would be futile, *id.*,  and hence will not be allowed.

We will issue an appropriate order.

                                                /s/William W. Caldwell  
                                                William W. Caldwell  
                                                United States District Judge

Date: August 17, 2016